## The Chicago & Alton Railroad Co. v. F. C. Smith, Adm.

1. NEGLIGENCE—*Running Trains at a Speed Prohibited—Presumptions.*—Where an injury has been done to a person or property in consequence of running a train in an incorporated city, town or village at a greater rate of speed than is permitted by the ordinances of such city, town or village, under paragraph 87 of chapter 114 R. S. (Hurd's Stat. 1897), such injury must be presumed to have been inflicted by the negligence of the railroad company or the agent operating such train.

2. SAME—*Rebuttal of the Presumption—Prima Facie Case.*—Where the fact that a train was running at a rate of speed prohibited by an ordinance is established, the presumption created by virtue of the statute, that the death was caused by the negligence of the company running such train, and is to be rebutted by the defendant.

3. ADMINISTRATION—*Letters of, May be Granted to Non-Residents.*—For the purpose of suing for damages occasioned by death from negligence, an administrator may be appointed in the State where the cause of action accrued, with the right to sue in the State.

**Trespass on the Case.**—Death from negligent act. Trial in the Circuit Court of Madison County; the Hon. MARTIN W. SCHAEFFER, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the February term, 1898. Affirmed. Opinion filed August 31, 1898.

WISE & McNULTY, attorneys for appellant.

M. MILLARD, attorney for appellee.

MR. JUSTICE WORTHINGTON delivered the opinion of the court.

Action by administrator for causing death of deceased.

Four counts in declaration, charging respectively that the train was carelessly run and driven; that no bell was rung or whistle sounded; that an ordinance of the village of Madison prohibited a speed greater than ten miles an hour, and that appellant's train was driven over a highway crossing within the limits of said village at a greater speed than ten miles; and that the space between a rail of appellant's track and a plank on the crossing was too wide, and that in consequence thereof, the foot of deceased was caught in the space, and he was thereby held and killed. All counts averred due care on part of deceased. Plea of not guilty. Verdict and judgment for appellee for $1,000.

Appellant's track crosses a highway in the village of Madison, leading west from the village toward the Mississippi river. At the point of crossing, the track is higher than the surrounding surface, and overlooks low ground between it and the river. At the crossing there are six railroad tracks commencing at the west, and being in order as follows: Chicago & Alton, Big Four side track, Big Four main track, Big Four side track, Wabash main track, and Wabash side track. Distances, from the east rail of the Alton track to the west rail of the first Big Four side track, seven feet, five inches; from the east rail of this side track to the west rail of the Big Four main track, seven feet, seven inches; from the Big Four main track to the Big Four east side track, eight feet, four inches; from this track to the Wabash main track, fifty-two feet, six inches.

Deceased resided in St. Louis and had no property in this State. Letters of administration were issued to appellee by the County Court of St. Clair County, Illinois.

It is in evidence that at the crossing the highway was planked, and that the space between the plank and the rails when put down, was two and one-half inches, which had been left for the flanges of the locomotives and car wheels to run in; that the space had been worn by the flanges of the wheels to two and seven-eighths inches at the west rail where deceased was killed.

The disputed facts in the case are, was the bell rung and

the whistle sounded; and was the deceased in the exercise of reasonable care at the time of the accident. The evidence shows that appellant's train was a passenger train, and was running at from thirty-five to forty miles an hour, while an ordinance prohibited a speed in excess of ten miles an hour. As to the bell and whistle, the testimony, while conflicting, tends to prove that both were sounded. The real issue in the case is, was the deceased in the exercise of reasonable care. The jury by their verdict say that he was. An examination of the evidence does not warrant us in saying that he was not.

The circumstances of the accident appear from the evidence to have been as follows:

Morris Rodgers, the deceased, living in St. Louis, on the Sunday of his death, came to the house of one Devaney, in Madison, to see his son who worked for Devaney. His son was not at Devaney's, but was fishing somewhere in the bottom between the railroad highway crossing and the river. Rodgers, in company with a lad, Lawrence Benson, about nine years old, left Devaney's and came to the highway crossing, where he stopped, while the lad went down in the bottom to find his son. Not finding him, the lad came back to the crossing and reported. They were standing on or near the space between the Big Four west side track and the Big Four main track. While there talking, a freight train outward bound, was seen coming up on the Big Four main track. To avoid this train they started west to cross appellant's track. While doing so they saw appellant's train, inward bound, coming down in the opposite direction to the Big Four freight train. The space between the nearest rails of the Big Four main track and appellant's track is about fifteen feet, so that the space between trains meeting and passing at the crossing would be, taking into account the projection of the cars over the rails, from ten to twelve feet. In crossing appellant's track, the testimony strongly tends to show that one of the deceased's feet was caught in the space between the west rail of the track and the plank of the crossing. He struggled to free himself and shoved the boy over the track out of the way of the locomotive, but

being unable to free himself, he was struck by it and killed. The testimony shows an indentation on the heel of one of his boots and the heel and sole partially torn off. The engineer and fireman on appellant's locomotive saw the man and boy when attempting to cross the track, and describe them as "squabbling," or "tussling," or as stated by one of them, that the "man seemed to be trying to hold the boy."

The engineer testifies: "As the train came around in sight of the crossing, I noticed a Big Four freight train going north. That was as I came around the curve. I at once, knowing there was a crossing there, began to look out for people coming on the track, so as to prevent striking anybody or having any trouble. When I came in sight of the crossing, I saw a man and boy standing on the road crossing on the track of the Chicago & Alton road. I gave the danger signal and applied the air brake. It attracted the attention of the boy and he notified the man. * * * When I saw they knew the train was coming I released my brakes for a minute, for I had been giving the danger signal, and the boy started to get off, but the man was holding to him. The boy tore loose and got off the track. The man and boy were on the east side of the track. He got over to the west railing and was in a leaning position when I struck him. * * * The man did not seem to make any effort to get off the track. He made no attempt whatever. * * * When I saw the man wasn't going to get out of the way, I threw the brake on again. I should judge the engine was then about seveny-five feet away when I made up my mind the man wasn't going to get off. * * * Running at the rate of thirty miles an hour, I think I could stop that train in 500 feet. Running at the rate of ten miles an hour, I could probably stop that train in thirty feet. I saw the man and boy on the crossing just as I came around the curve, about 1,200 feet away."

If this testimony "that the man made no attempt whatever" to get off the track was true, appellee should not have recovered. The jury evidently did not believe that it was true, and neither do we. The testimony of the engineer and fireman tends to prove suicide on the part of the

deceased, coupled with an attempt to cause the death of the boy by holding him until the engine should strike him. The jury evidently, and we think rightly, discredited their conclusions, and believed the "squabbling" and "tussling" as they termed it, to have been the desperate effort of the man to save himself and the boy.

Appellant insists that the deceased was guilty of contributory negligence in attempting to cross its tracks, seeing that its train was approaching. This was for the jury to determine under all the circumstances of the case. The jury doubtless concluded that a prudent man would not care to stand on a space, ten or twelve feet wide, between two trains passing in opposite directions. There was, too, ample time to cross appellant's track, if appellant's train had been running ten miles an hour. There was time to have crossed it running thirty-five miles an hour, if deceased's foot had not caught in the space between the rail and the plank of the crossing. This is shown by the fact that the boy got over safely. Under these conditions we are not prepared to say that the jury erred in concluding that the attempt to cross appellant's track was not contributory negligence.

"Where an injury has been done to a person or property in consequence of running a train in an incorporated city, town or village at a greater rate of speed than is permitted by any ordinance of such city, town or village, under paragraph 87 of chapter 114 of the statute (Hurd's Stat. 1897), such injury must be presumed to have been inflicted by the negligence of the railroad company or the agent operating such train." Ill. Cen. R. R. Co. v. Ashline, 171 Ill. 319.

"It was proven and not denied, that defendant was violating the ordinance at the time of the accident. That fact being established, the presumption was created by virtue of section * * * that the killing of deceased was done by the negligence of defendant. * * *

"It was for defendant to rebut that presumption." A. T. & S. F. R. R. Co. v. Feehan, 47 Ill. App. 71.

In the case at bar, it is more than a mere presumption; for the engineer, seventy-five feet away, sees that the man is not likely to get off the track, and according to his own

testimony, could have stopped the train in thirty feet if it had been running ten miles an hour. Appellant also urges that standing on the highway where it was crossed by railroad tracks, was contributory negligence. The deceased was not a trespasser. He was not chargeable with notice that appellant's train would be run at an unlawful rate of speed, three times in excess of the limited rate. We are not prepared to say that, under the circumstances, standing for a few minutes on a highway so situated, is *per se* an act of contributory negligence.

Instruction numbered 40, given for plaintiff, is the usual instruction in reference to the ringing of the bell and sounding the whistle. Appellant claims that it was error to give it in this case, because the boy testifies that he saw the train approaching and notified deceased, and that there was then time to have crossed in safety. The boy testifies that when he saw the train, it was two car lengths away, about seventy-five feet, as afterward stated in cross-examination. The statute requires the bell to be rung and the whistle sounded eighty rods from a crossing. It was for the jury to say, under the testimony, if they believed they were not sounded, whether a failure to give notice eighty rods away caused death, although notice was given in another manner when seventy-five feet away. It was not error under the evidence to give the instruction.

The twelfth instruction given for defendant, in reference to the bell and whistle, stated the law definitely and positively in terms as favorable for appellant as it was entitled to ask.

Defendant's refused instructions:

Instruction numbered 25, asked and refused, is argumentative in structure, and in addition is given in substance in No. 20.

No. 28 was properly refused. It ignores the unquestioned fact that appellant's train was running at a prohibited speed. The engineer might have done all in his power to stop a train running thirty-five miles an hour, " as soon as it appeared probable to him that the deceased was paying no

attention to his warning or danger signals," but that would not of itself relieve appellant of liability, when the speed of its train was by law limited to ten miles an hour. Neither is there any evidence that the engineer ever had any experience in a similar case, that is to say, in running thirty-five miles an hour over a highway in a village, with persons delayed or delaying upon the highway and track.

The thirtieth instruction was misleading.

In referring to "a standard size of feet and boot heels worn on feet," it introduced an element not necessary to be in evidence, and ignored entirely the question as to whether if the crossing had been properly constructed in the first place, it had become unsafe by wear and use.

There is no evidence to warrant giving the thirty-first instruction. The testimony of Hubbard, appellant's civil engineer, shows that when the crossing was constructed, the space between the rail and the plank was two and one-half inches, and that by wear it had become two and seven-eighths inches. The presumption is that it was wide enough when built, as he testifies that it was properly constructed. If it was properly constructed with a width of two and one-half inches, what evidence is there to show that for the proper carrying on of appellant's business it should be two and seven-eighths inches wide?

Nineteen instructions were given for appellant, and they fairly cover every point of law applicable under the evidence.

Appellant urges that letters of administration were improperly granted to appellee, for the reason that the deceased was not a resident and had no property in this State.

Under the plea of "not guilty" this question is not before the court. Nor are any authorities cited to sustain the position. If deceased had been only injured, instead of being killed, his right to sue in this State would not be questioned. As the right of action survives, we fail to see why an administrator may not be appointed in the State where the cause of action accrued, with the right to sue in the State. Judgment affirmed.